# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 818 | **DATE** | February 25, 2003 |
| **CASE TITLE** | | *United States of America v. Andre Welch* | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10)■ [Other docket entry]   For the reasons set forth in the attached Memorandum and Order, the Court GRANTS the Government's motion in limine to exclude testimony of Welch's expert concerning eyewitness identification [36-1]; GRANTS Defendant Welch's motion in limine to bar the government from introducing evidence of two prior bank robberies at Tech Federal [32-1] and DENIES the Government's motion in limine to introduce evidence of the two bank robberies [27-1]; and GRANTS Welch motion in limine to exclude Austin from testifying as to Welch's alleged statement regarding the three prior robberies of Tech Federal but DENIES the motion concerning the two statements concerning the Illiana Federal robbery.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | FEB 2 8 2003 | |
| | Notified counsel by telephone. | | | date docketed | 46 |
| | Docketing to mail notices. | | U.S. DISTRICT COURT | FEB 2 8 2003 | |
| | Mail AO 450 form. | | CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 03 FEB 28 AM 8:19 | | |
| RTS | courtroom deputy's initials | | FILED-ED 01 | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| | ) | Hon. Blanche M. Manning |
| v. | ) **DOCKETED** | |
| | ) | 02 CR 818 |
| | ) FEB 2 8 2003 | |
| ANDRE WELCH | ) | |
| | ) | |

### MEMORANDUM AND ORDER

On August 20, 2002, a federal grand jury indicted Defendant Andre Welch of robbing the

Illiana Federal Credit Union ("Illiana Federal"), in Calumet City, Illinois, in violation of 18

U.S.C. § 2113(a).

The present matter comes before the court on the following pre-trial motions: (I) the

Government's Motion in Limine to Exclude Expert Testimony Concerning Eyewitness

Identification and Human Memory Perception; and (II) the Government's Motion in Limine to

Introduce Rule 404(b) Evidence of Prior Crimes and Welch's Motion to Bar the Government

from Introducing Evidence of Prior Bad Acts and Motion to Exclude Prior Statements Pursuant

to Rules 403 and 404.[1] The Court will address each motion in turn.

### I.      Expert Testimony Regarding the Reliability of Eye Witness Testimony

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E), Welch gave notice of his

intention to introduce expert testimony from Dr. Otto Maclin on the unreliability of eye witness

testimony.  In response, the Government filed the present motion in limine to exclude

Dr. Maclin's testimony on the grounds that his testimony will not assist the jury.

---

[1]      The Government has also filed Consolidated Motions in Limine, regarding routine
trial issues.  The Court will address these issue as they arise at trial.

In determining the admissibility of expert testimony on the reliability of eyewitness testimony, a court must apply the same two part test which is applied to the admissibility of scientific experts generally, as set forth in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993). United States v. Hall, 165 F.3d 1095, 1101-02 (7th Cir. 1999); United States v. Crotteau, 218 F.3d 826, 831 (7th Cir. 2000). Under Daubert, the court must first determine whether the expert testimony is scientifically valid. Hall, 165 F.3d at 1102. Next, the court "must determine whether the evidence or testimony assists the trier of fact in understanding the evidence or determining a fact at issue." Id.

Here, the Government does not contest the scientific validity of Dr. Maclin's expertise, instead, it seeks to exclude his testimony on the grounds that it will not assist the jury in understanding the evidence. Because the Government has not challenged the scientific validity of Dr. Maclin's testimony and based on this Court's review of his curriculum vitae and published research, this Court finds that his testimony would qualify as valid scientific knowledge under Daubert. See Hall, 165 F.3d at 1103 (holding that "because the government challenged [the doctor's] testimony solely on the basis that it would not assist the trier of fact . . . the district court assumed, as we do, that the proposed testimony qualified as scientific knowledge under Daubert"). Accordingly, this Court will only examine Dr. Maclin's testimony under the second part of the test.

In applying the second part of the test, the Court first notes that the Seventh Circuit has expressed "disfavor of expert testimony on the reliability of eyewitness identification." Hall, 165 F.3d at 1104. This "presumption" against the admission of such testimony stems from the Seventh Circuit's "concerns about whether such expert testimony would actually assist the trier

of fact." Id. at 1103. The court noted that such testimony will not "aid the jury because it addresses an issue of which the jury is already generally aware, and will not contribute to their understanding of the particular" facts. Id. at 1104. The court also noted that the use of expert testimony on eyewitness identification "is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury – determining the credibility of witnesses." Id. at 1107.

In affirming the exclusion of the identification expert in Hall, the court identified three considerations which supported the court's decision: (1) the opportunity for the defendant to cross-examine the eyewitnesses to "cast doubt on their ability to identify" the defendant; (2) the use of instructions cautioning the jury about the reliability of eyewitness identifications; and (3) the presence of corroborating evidence, which "undercuts the need . . . for expert testimony on eyewitness identification. Id. at 1107-08.

Here, after examining the proposed evidence, this Court finds that Dr. Maclin's expert testimony would not assist the jury. The Government asserts that it will not seek to elicit any eyewitness identifications from witnesses present at any of the bank robberies. Instead, the Government asserts that its identification witnesses (Welch's ex-wife, former roommate, and former co-worker) will base their identification of Welch as the bank robber on surveillance photographs taken in the bank and their personal familiarity with Welch.

Welch contends that Dr. Maclin will assist the jury in assessing the reliability of these witnesses by testifying to factors that lead to misidentification such as: (1) "clothing bias" (the chance that the witnesses will identify Welch simply because the person depicted in the bank surveillance photos wore clothing similar to that frequently worn by Welch); (2) "cognitive face

-3-

recognition" (where the identification is based on viewing "someone structurally similar" to a person the witness is familiar with); and (3) the effect of time on memory.

After reviewing the identification witnesses proposed testimony and the basis of their knowledge and Dr. Maclin's proposed testimony, this Court finds that the three factors in <u>Hall</u>, which justify the exclusion of expert testimony on eyewitness identifications, are present here. Welch will have ample opportunity to cross-examine the witnesses as to the strength of their identifications and their knowledge and familiarity with Welch. The Court will also give the cautionary instructions to the jury which are set forth in <u>Hall</u>. Finally, this Court finds that the Government has corroborating evidence implicating Welch in the bank robbery. This corroborating evidence undercuts the need for Dr. Maclin's testimony. Accordingly, after applying the <u>Hall</u> factors, this Court exercises its considerable discretion and GRANTS the Government's motion to exclude Dr. Maclin's testimony.

## II.     Use of Other Crimes, Wrongs, and Acts Evidence Under Rule 404(b)

The Government has moved to admit evidence of two uncharged bank robberies (in February and May of 1997 at Tech Federal Credit Union ("Tech Federal")), which Welch allegedly committed within six months of committing the robbery he is currently charged with, and a statement Welch allegedly made to a friend, just prior to the charged robbery, that he had robbed Tech Federal three times. The Government contends that this evidence is admissible as evidence of *modus operandi* and as a statement by a defendant under Rule 801(d)(2)(A). In response, Welch has filed motions in limine to exclude this evidence.

Federal Rule of Evidence 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he likely acted in

conformity therewith on a particular occasion. Fed. R. Evid. 404(b). The rationale for the exclusion of this evidence is that it is of slight probative value and tends to distract the trier of fact from the facts at issue. United States v. Smith, 103 F.3d 600, 602 (7th Cir.1996). This evidence may be admissible, however, for any other relevant purpose including "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . ." Id.

The Seventh Circuit has held that evidence of *modus operandi* falls within Rule 404(b)'s "identity" exception. United States v. Rollins, 301 F.3d 511, 518 n.3 (7th Cir. 2002); United States v. Moore, 115 F.3d 1348, 1354 n.3 (7th Cir. 1997). This holding is based on the premise that evidence of *modus operandi* is proof of the defendant's "distinct method of operation" in committing the crimes, and not the defendant's propensity to commit crimes in general. United States v. Robinson, 161 F.3d 463, 467 (7th Cir. 1998). See also Moore, 115 F.3d at 1354 n.3.

To admit evidence of *modus operandi*, the evidence of the other crimes must: (1) establish the defendant's distinctive method of committing the charged crime, not "the defendant's propensity to commit the charged crime"; (2) be "sufficiently" similar in "time and manner" to establish relevance to the charged crime; (3) "be sufficient to support a jury finding that the defendant committed the similar act; and (4) have a probative value which is not "substantially outweighed by the danger of prejudice to criminal defendant." Rollins, 301 F.3d at 519.

Here, Welch contends that the evidence of the two prior bank robberies does not meet this four prong test because the evidence of the other two robberies: (1) is not sufficiently similar to the bank robbery charged in the Indictment; (2) would not support a jury finding that Welch

committed the crimes; and (3) is unfairly prejudicial. As explained below, because the Court finds that the three bank robberies are not sufficiently similar to fall within the *modus operandi* exception, the Court will only discuss Welch's first argument – the lack of similarities between the three robberies.

The Seventh Circuit has expressly "cautioned that if defined broadly enough, *modus operandi* evidence can easily become nothing more than character evidence that Rule 404(b) prohibits." Robinson, 161 F.3d at 468. To protect the defendant, the *modus operandi* evidence "must bear a singular strong resemblance to the pattern of the offense charged." Id. The similarities must be "sufficiently idiosyncratic" so as to permit a reasonable inference that the crimes were committed by a distinctive method used by the defendant. Id. Where the defendant is charged with bank robbery, the court must ensure that there are "sufficient" and "numerous similarities" between the other bank robberies not charged in the indictment and the charged bank robbery, "'that clearly distinguish the defendant from other criminals committing bank robberies.'" Id. (quoting Moore, 115 F.3d at 1355)).

Because the similarity requirement is a factually based inquiry, to examine whether the two uncharged bank robberies have sufficient and numerous similarities to the charged bank robbery, the Court will examine the facts from decisions by the Seventh Circuit and other circuits on this issue. In Robinson, 161 F.3d at 468, in affirming the admission of evidence of another bank robbery to show *modus operandi*, the Seven Circuit found that:

> [i]n both cases, the robber donned an orange ski mask prior to entering the bank, and he entered the bank carrying a distinctive duffle bag [a Louis Vitton brand] in one hand and brandishing a handgun in the other. Once inside the banks, the robber vaulted over the teller counter and demanded money. The robber emptied the teller drawers at each bank by himself, but only after placing the handgun down. The getaway vehicle in both cases

was identified as a blue Chevrolet Cavalier. Furthermore, the robberies occurred within ten days and twenty-five miles of each other.

Id. Consequently, the court held that these similarities were "sufficiently idiosyncratic . . . to permit an inference" that the same criminal committed both robberies.

Similarly, in Rollins, 301 F.3d at 519, the court found that the uncharged bank robberies were sufficiently similar to the charged bank robberies to be admitted under the *modus operandi* exception. In reaching this conclusion, the court found that most, if not all, of the robberies had the following "common threads":

> (1) the donning of thick, dark- framed glasses; (2) the wearing of a beige, three-quarter length down coat; (3) the ruse of asking seemingly innocuous customer questions before and during the robberies; (4) the use of a black and grey handgun placed calmly on the teller counter; (5) the commission of multiple crimes within a period of only a few months; and (6) similar descriptions that typically described the assailant as a medium to dark-complected African-American male, approximately 5'10" to 6'0" tall, with a thin build and a narrow face.

Id.

Likewise, in Moore, 115 F.3d at 1355, affirming the admission of evidence of a prior bank robbery, the court held the "[n]umerous commonalities between [the] robberies makes them clearly distinctive from the thousands of bank robberies committed each year." These "significant similarities" included:

> 1) two men identified as black and about six feet tall committed the robberies; 2) the crimes were committed in the morning; 3) the robbers emptied the cash drawers with little or no assistance from bank employees, instead of ordering the tellers to do it for them; 4) the money was stuffed into the robbers' pants pockets as opposed to utilizing some form of bag; 5) the robbers used hoods or masks to conceal their face; 6) the robbers wore dark clothing; 7) the targeted financial institutions were all small with no security guard or drive-up window, and were located near residential areas; 8) the robberies occurred within a few months of each other; and 9) most importantly, the robbers used a unique method of 'casing' the institution prior to the robbery, which entailed Moore entering the facility approximately 30 to 60 minutes prior to the robbery and very politely asking for directions or a job application.

-7-

Id.

In addition, in <u>United States v. Smith</u>, 103 F.3d 600, 603 (7t h Cir. 1996), affirming the admission of an uncharged bank robbery as evidence of *modus operandi*, the court held that the two robberies were "sufficiently idiosyncratic"to "make the two bank robberies clearly distinctive from the thousands of other bank robberies committed each year." In making this determination, the court found the following "numerous similarities": (1) young white males with "slender builds" committed both bank robberies; (2) another person drove the robbers to the banks; (3) the robbers used knifes, held vertically in the air, to rob the banks; (4) the robbers went behind the counter to steal the money; (5) both of the banks robbed were "small, sparsely-staffed bank branches"; and (6) the robberies were committed within one month and within "close geographic proximity" to each other. Id.

In contrast to the above cases, several other circuits have excluded *modus operandi* evidence on the grounds that the similarities alleged by the government were generic of the thousands of other bank robberies which occur each year and are thus not distinctive to fall within the *modus operandi* exception. For example, in <u>United States v. Carroll</u>, 207 F.3d 465, 469 (8th Cir. 2000), the district court admitted evidence of a prior uncharged bank robbery as evidence of *modus operandi*. The similarities between the two robberies included the use of a "nylon stocking mask" and a gun by the perpetrator, and that the robber "vaulted over the counter" and put the money in a bag. Id. In holding that the robberies were "generic" in nature and not admissible under the *modus operandi* exception, the Eighth Circuit held that "the characteristics shared by the two robberies are too common to form a *modus operandi* that uniquely identifies [the defendant] as the perpetrator" of both robberies. Id.

Similarly, in <u>United States v. Luna</u>, 21 F.3d 874, 879-80 (9th Cir. 1994), reversing the admission of an uncharged bank robbery, the court found the following similarities between the two robberies:

> All the robberies were conducted takeover style, i.e., rather than robbing individual tellers and attempting to hide that fact from the rest of the bank, the robbers announced their presence to one and all and took control of the bank. The robberies all occurred between 10:30 and 11:30 a.m., and the robbers entered the banks noisily. In each case, the robbers wore sweatpants, sweatshirts, some kind of mask, and gloves. The robbers were armed. At least one robber jumped over the counter. The robbers swore at the tellers and pushed, tossed, or struck one or more bank employees. They took money out of one or more of the tellers' drawers and put it into bags. They used a getaway car in all of the robberies, and in both of the uncharged crimes and one of the charged crimes, they abandoned the car with its motor running.

<u>Id.</u> In finding that these similarities were not sufficient to fall within the *modus operandi* exception, the court held that these were "common features" and "largely generic" of bank robberies in general. <u>Id.</u> at 881.

Likewise, in <u>United States v. Lail</u>, 846 F.2d 1299, 1301 (11th Cir. 1988), the district court admitted evidence of a prior uncharged bank robbery under the *modus operandi* exception based on the following four common features of the charged and uncharged robberies: "(1) a lone gunman, (2) use of a handgun, (3) lack of a disguise, and (4) proximity in time of occurrence." Reversing the lower court, the Eleventh Circuit held that the first three traits were "common to many bank robberies" and none of the similarities "could be called a signature trait." <u>Id.</u>

Additionally, in <u>United States v. Myers</u>, 550 F.2d 1036, 1045-46 (5th Cir. 1977), the government contended that an uncharged bank robbery was admissible under the *modus operandi* exception because the two robberies had the following similarities:

> (1) both crimes were bank robberies, (2) perpetrated . . . between two and three o'clock in the afternoon. In both robberies the victimized bank was [3] located on the outskirts of a town, [4] adjacent to a major highway. In both robberies the participants [5] used a

revolver, [6] furnished their own bag for carrying off the proceeds, and wore [7] gloves and [8] masks crudely fashioned from nylon stockings.

Id. at 1046. In reversing the district court's admission of the uncharged robbery, the Fifth Circuit held that each of the above eight factors are "a common component of armed bank robbery," and hence the fact that those elements were present in both the charged and the uncharged robberies meant virtually nothing. Id.

Here, the Government contends that the two uncharged bank robberies at Tech Federal and the charged robbery of Illiana Federal are sufficiently similar in time, manner, and location, to fall within the *modus operandi* exception. The Government points out the following six similarities in all three robberies: (1) the robber wore sun glasses and a hat or hood to conceal his identity; (2) the robber had the same physical characteristics, height (5'9" to 6'), weight (160-180 lbs.), age (20-30 years old), and race (African-American), which matches Welch's features; (3) a demand note was given to the teller; (4) the robber brandished a semi-automatic hand gun in his left hand; (5) a plastic bag was given to the tellers to put the money in; (6) all three robberies were committed within two miles and six months of each other; and (7) in the robbery prior to the charged robbery, the robber was given a dye pack which exploded, and in the charged robbery, the robber instructed the teller not to include any dye packs. As to the last similarity, the Government contends that it shows that the same person committed the charged robbery because the robber had a heightened awareness of the dye packs after he was given one in his prior robbery.

After examining the above alleged similarities, this Court finds that there are not "sufficient" and "numerous similarities" between the other bank robberies not charged in the indictment and the charged bank robbery which would make "them clearly distinctive from the

-10-

thousands of bank robberies committed each year." Moore, 115 F.3d at 1355. In the cases above, the robberies had clearly identifiable similarities such as putting the money in a Louis Vitton duffle bag, wearing an orange ski mask, and using a specific type of vehicle as a getaway car. Robinson, 161 F.3d at 468. Here, in contrast, the only distinguishable similarity is that all three robberies occurred within two miles and six months of each other. Other than this, all three robberies appear average in that they were committed by an African-American male of average height and weight between 20 to 30 years of age. As Exhibit C to Welch's motion points out, in 2000, bank robbers were 94% male and 51% African-American, and used a handgun 27% of the time. Additionally, using a demand note, supplying a bag to the teller to put the money in, and threatening the teller not to put any dye packs in the bag, does not make any of the three robberies unique from the thousands of bank robberies committed each year. Consequently, this Court finds that the two Tech Federal robberies and the Illiana Federal robbery are not sufficiently similar to fall within Rule 404(b)'s identity exception, and therefore DENIES the Government's motion in limine to admit and GRANTS Welch's motion in limine to exclude evidence of the two prior bank robberies.

The Government additionally seeks to admit a statement Welch allegedly made to his former roommate, Steve Austin. These statements concern both the charged robbery and the uncharged robberies. Shortly before the robbery of Illiana Federal, Welch allegedly told Austin that he knew a way to make extra money. When Austin asked him how, Welch stated that he "would have to kill [Austin] if [Welch told] him." Later that day, however, Welch stated that the way to make extra money was "banks." That same day, while Welch and Austin were driving by Tech Federal, Welch pointed to the bank and stated "I got that three times."

The Government contends that this statement is admissible as a party admission under Federal Rule of Evidence 801(d)(2)(A), which states that statements by a party are not hearsay. The fact that Welch's statement to Austin is not hearsay, however, does not end this Court's inquiry. The party admission must also be relevant. United States v. Mickie, 849 F.3d 473, 478 (7th Cir. 1988).

Here, the Government has articulated two theories for the admission of the statements to Austin – one for the statement regarding the charged robbery and one for the statement concerning the uncharged robberies. The Government first contends that the statement regarding the charged robbery (the first two statements) are relevant to show Welch's intention and plan to rob Illiana Federal and to "complete the story of the crime." See United States v. Gibson, 170 F.3d 673, 676 (7th Cir. 1999). The Court finds that these first two statements are admissible to show intent and planning of the robbery of Illina Federal.

As for the other statement, the Government wants to introduce Austin's testimony as proof that Welch committed the two Tech Federal robberies. As explained above, however, this Court has excluded evidence of these robberies under Rule 404(b), and thus, finds that Welch's alleged statement to Austin is not relevant and therefore not admissible.

The Court thus GRANTS Welch's motion in limine to exclude Austin from testifying as to Welch's alleged statement regarding the three prior robberies of Tech Federal but DENIES the motion concerning the two statements concerning the Illiana Federal robbery.

## CONCLUSION

For the foregoing reasons, the Court:

- GRANTS the Government's motion in limine to exclude testimony of Welch's expert concerning eyewitness identification [36-1];

- GRANTS Defendant Welch's motion in limine to bar the government from introducing evidence of two prior bank robberies at Tech Federal [32-1] and DENIES the Government's motion in limine to introduce evidence of the two bank robberies [27-1]; and

- GRANTS Welch motion in limine to exclude Austin from testifying as to Welch's alleged statement regarding the three prior robberies of Tech Federal but DENIES the motion concerning the two statements concerning the Illiana Federal robbery.

It is so ordered.

**ENTER:**

Blanche M. Manning

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

**DATE:** 2-25-03