# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche M. Manning | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 818 | **DATE** | September 22, 2003 |
| **CASE TITLE** | *United States v. Welch* | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth in the attached Memorandum and Order, the Court OVERRULES Defendant Welch's Objections [62-1] and GRANTS the Government's Motion for Upward Departure. It is so ordered.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| ✓ | Notices mailed by judge's staff. | SEP 23 2003 date docketed |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | docketing deputy initials |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | date mailed notice |
| RTS | courtroom deputy's initials | mailing deputy initials |
| | Date/time received in central Clerk's Office | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | Hon. Blanche M. Manning |
| v. ) | |
| ) | 02 CR 818 |
| ANDRE WELCH ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter comes before this Court on the sentencing of Defendant Andre Welch, who was found guilty by a jury of robbing the Illiana Federal Credit Union, in Calumet City, Illinois, in violation of 18 U.S.C. § 2113. The issues currently before the Court are: (1) the Government's Motion for Upward Departure; and (2) Welch's Objections to the Presentence Investigation Report ("PSR"), which was prepared by the United States Probation Office ("Probation"). For the reasons that follow, the Court GRANTS the Government's Motion for Upward Departure and OVERRULES Welch's Objections to the PSR.

### I. Government's Motion for Upward Departure

The Government requests that this Court depart upward and thereby increase Welch's criminal history category to a VI because his current category of IV "does not adequately reflect the seriousness of his past criminal conduct." Specifically, the Government points to four uncharged bank robberies and a fraud on the State of Illinois as criminal conduct committed by Welch but not charged or reflected in his current criminal history category.[1]

---

[1] Because the Government seeks to hold Welch responsible for sentencing purposes for the bank robberies only, the Court will only address the robberies.

Section 4A1.3 of the United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") authorizes a district court to depart from the guideline range and impose a greater term of imprisonment if "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." In making this determination, a court may consider "prior similar adult criminal conduct not resulting in criminal conviction," U.S.S.G. § 4A1.3(e), or even formal criminal charges being filed. United States v. Carter, 111 F.3d 509, 514 (7th Cir. 1997). See also United States v. Ruffin, 997 F.2d 343, 345 (7th Cir. 1993) ("judges may consider even criminal conduct of which the defendant has been acquitted").

Because prior conduct is the key factor, the district court must make an independent determination that a "preponderance of the evidence" indicates that the defendant committed prior criminal acts. Ruffin, 997 F.2d at 346; U.S.S.G. § 6A1.3, Commentary. To satisfy this preponderance of the evidence standard, the Government must put forth "reliable" evidence that the defendant committed the prior criminal conduct. U.S.S.G. § 4A1.3. "Reliable evidence" which the court may consider includes evidence, such as hearsay, which is not normally admissible at trial. United States v. Francis, 39 F.3d 803, 811 (7th Cir. 1994). See also U.S.S.G. § 6A1.3(a) ("[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence at trial"). Consequently, the sentencing court may consider a wide range of evidence "so long as it has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3, Commentary.

Here, the Government has moved to depart upward based on four bank robberies, which Welch allegedly committed. The Court will review the evidence from each of these four robberies to determine if it is "reliable" and whether it meets the "preponderance of the evidence" standard. The first robbery occurred on February 7, 1997 at the Tech Federal Credit Union ("Tech Federal"). The robber was described as an African-American male in his 20's, approximately 5'9" and 180 lbs., carrying a "yellow construction hard hat." The police recovered a yellow hard hat about a block away from the bank, which turned out to have Welch's fingerprints and those of his roommate at the time, William Wright. At that time, both Welch and Wright lived approximately two blocks from Tech Federal. Moreover, after reviewing the bank's surveillance tape, Welch's ex-wife, Judith Welch, identified Welch as the person on the bank's surveillance photos.

The second robbery occurred on March 25, 1997 at Tech Federal. A teller at Tech Federal picked Welch out of a line-up and a photo spread as the person who robbed the bank on March 25, 1997. Additionally, Welch's ex-wife identified him as the person on the bank's surveillance photos.

The third robbery also occurred at Tech Federal on May 20, 1997. The bank's surveillance photos show that the robber was an African-American male, about 5'9", 165-175 lbs, wearing sunglasses and a black jacket. The robber left the bank with cash and a dye pack. Shortly after the robbery, an employee of the bank witnessed the dye pack explode. During a search of a location where Welch lived, the FBI found a black jacket stained with red dye. After analyzing the black jacket, the FBI lab concluded that it was stained with traces of the exact same red dye and tear gas that are used in the dye packs at Tech Federal. Additionally, Judith Welch

identified not only the black jacket as belonging to Welch but identified Welch as the person on the bank's surveillance tape.

The fourth robbery occurred on July 8, 1997, at the Bank of Homewood, which is located near the residence of Welch's girlfriend at that time. The robber handed the teller a note which stated not to put any dye packs in the bag. Judith Welch identified Welch as the person on the bank's surveillance photos and identified his handwriting on the note that the robber gave to the teller.

The Government points out the following similarities in all four robberies: (1) the robber wore sun glasses and a hat or hood in an apparent effort to conceal his identity; (2) the robber had the same physical characteristics, height (5'9" to 6'), weight (160-180 lbs.), age (20-30 years old), and race (African-American), all of which match Welch's features; (3) the robber brandished a semi-automatic hand gun in his left hand; (4) a plastic bag was given to the tellers to put the money in; (5) the robberies were committed near locations where Welch either lived or spent time at (William Wiright's home and Yvonne Welch's home); and (6) Judith Welch identified Welch as the person on the bank's surveillance camera in all four robberies.

Moreover, after the dye pack exploded in the third robbery, in the fourth robbery the robber instructed the teller not to include any dye packs with the money. The Government contends that this shows that the same person committed the fourth robbery because the robber had a heightened awareness of the dye packs after he was given one in the third robbery.

In addition, the Government points to a statement Welch made to his former roommate, Steve Austin. While Welch and Austin were driving by Tech Federal, Welch pointed to the bank

-4-

and stated "I got that three times." Austin believed that this statement meant that Welch robbed Tech Federal three times.

In response, Welch contends that the above evidence is not reliable. For example, Welch notes that on September 3, 1997, Magistrate Judge Denlow, in a preliminary hearing, found that despite the identification of the bank teller, there was not sufficient probable cause to charge Welch with the robbery on March 25, 1997. Welch also points to the fact that Judith Welch is Defendant's ex-wife, in a marriage marred by adultery and allegations of domestic abuse.

After reviewing all of the evidence, this Court finds that the Government has put forth sufficient "reliable" evidence to show by a preponderance of the evidence that Welch committed the three bank robberies at Tech Federal on February 7, March 25 and May 20, 1997, and the robbery of the Bank of Homewood on July 8, 1997.[2] While no one piece of evidence clearly implicates Welch, the totality of the evidence meets the preponderance of the evidence standard. Of particular importance to this Court is the black jacket found at his residence, the yellow hard hat, the statement to Austin, and the bank surveillance photos. Moreover, even discrediting the identification by Judith Welch and the teller, this Court finds that their identification of Welch is sound. After closely observing Welch at the trial and the sentencing hearing and closely comparing him to the bank surveillance tapes, this Court firmly believes that Welch is the robber in those photographs.

---

[2] This decision is not inconsistent with this Court's pretrial ruling that the two Tech Federal robberies and the charged robbery are not sufficiently similar to fall within Rule 404(b)'s identity exception. Here, in contrast to the Rule 404(b) motion, the only question is whether the Government put forth sufficient reliable evidence to show by a preponderance of the evidence that Welch committed the alleged robberies.

Accordingly, the court finds that the sentencing range normally imposed by the Guidelines for a criminal history category IV does not adequately reflect the egregious nature of Welch's criminal past or the likelihood that he will commit future crimes if given the opportunity, and GRANTS the Government's Motion for Upward Departure and departs upward from the Guideline range under section 4A1.3.

Having found that an upward departure is warranted, the Court must now determine the appropriate sentencing range. Under Guideline section 4A1.1(a), each of the four uncharged bank robberies would have resulted in three additional criminal history points if factored into his criminal history, for a total of 20 criminal history points.

The Government, however, contends that the Court should not stop here. According to the Government, 20 criminal history points exceeds the bounds of criminal history category VI, and that, pursuant to section 4A3.1, this Court should increase Welch's guideline range from a 27 to a 28 to reflect his prior criminal history. The Government is correct in that this Court may increase Welch's offense level one level for every three criminal history points above 15 criminal history points. See United States v. Cross, 289 F.3d 476, 478 (7th Cir. 2002); United States v. Ewing, 129 F.3d 430, 437 (7th Cir. 1997).

Accordingly, this Court will increase Welch's Guideline level by one to a 28, based on the fact that he has 20 criminal history points. Under a level of 28 and a criminal history category of VI, Welch's term of imprisonment falls between 140-175 months.[3]

---

[3] Because the statutory maximum for bank robbery under 18 U.S.C. § 2113 is 20 years, the upward departure in this case does not implicate Apprendi v. New Jersey, 530 U.S. 466 (2000). See United States v. Snulligan, 12 Fed. Appx. 375, 377, 2001 WL 674620, at * 1 (7th Cir. June 12, 2001) (as long as the upward departure does not fall outside of the statutory maximum, Apprendi is not applicable).

## II. Obstruction of Justice

Welch objects to the two level enhancement in the PSR for obstruction of justice, pursuant to Guideline section 3C1.1. Probation found that Welch "willfully impeded, or attempted to obstruct or impede the administration of justice" when he "provided falsified ... military discharge papers" to the Court in "an attempt to secure bond release."

Section 3C1.1 provides for a two level increase where:

> (A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense. . . .

Application Note 4 provides a "non-exhaustive list of examples of the types of conduct to which this adjustment applies," and includes "(c) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding" and "(f) providing materially false information to a judge."

Welch contends that the obstruction enhancement is improper because: (1) the army discharge document was not "material" to the issues in his bond hearing; and (2) the Government has failed to show that he "wilfully" caused the document to be submitted to the Court. The Court will discuss each of these contentions in turn.

"Material" information is defined as "information that, if believed, would tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, Application Note 6. Numerous courts have held that misstatements made in a pre-trial detention hearing which could affect the judge's decision constitute obstruction under section 3C1.1. See United States v. Harrison, 42 F.3d 427, 430 (7th Cir. 1994); United States v. O'Dell, 204 F.3d 829, 836-37 (8th

Cir. 2000); United States v. Pearson, 7 F.3d 228, 1993 WL 385333 (4th Cir. Sept. 29, 1993). In Pearson, 1993 WL 385333, at *2, the Fourth Circuit affirmed the district court's upward departure for obstruction where the defendant's father requested that a third-party write a fraudulent letter, which was submitted at a detention hearing, stating that the defendant was employed.

Here, the document in question, which was submitted to the magistrate judge and this Court, stated that Welch was "honorably discharged" from the military. During the detention hearing before the magistrate judge and the reconsideration hearing before this Court, Welch's attorneys argued that he was not a flight risk and thus should be granted bond. In support of the contention that he was not a flight risk, Welch's attorneys cited to the fact that he was "honorably discharged" from the army. In fact, however, Welch was given an involuntary general discharge for drug abuse and failure to comply with drug rehabilitation. After reviewing the altered document and the transcripts from the relevant hearings, this Court finds that, although Welch was denied bond, the altered documents could have certainly affected the issue under determination (whether Welch was a flight risk). Thus, the fraudulent discharge document was material under section 3C1.1.

Welch also contends that an obstruction enhancement is improper because given that he did not produce or present the altered document to the Court, he cannot be held to have "wilfully" obstructed justice. Welch points to the fact that his wife gave the fraudulent discharge paper to his attorney, who then presented it to the Court. Thus, Welch would like this Court to believe that he had absolutely no hand in the submission of the false document.

The Court finds this assertion incredulous. Even if Welch's wife took it upon herself to alter the document without his knowledge, the Court finds it hard to believe that Welch's attorneys would have presented the discharge paper without conferring with their client.[4] Moreover, even if Welch did not know of the altered document until it was presented in open court, "a defendant cannot stand idly by while he hears his attorney provide false information to the court." United States v. Owilabi, 69 F.3d 156, 164 (7th Cir. 1995) (affirming obstruction enhancement). See also United State v. Peterson, 37 Fed. Appx. 789, 791, 2002 WL 410628, at *3 (7th Cir. Mar. 15, 2002) ("[b]ecause a lawyer acts as a defendant's agent, misleading presentations made through counsel (with the defendant's acquiescence) can be a basis for enhancing punishment even though the defendant was otherwise silent"). Accordingly, this Court finds that even assuming Welch took no part in the alteration or presentation of the fraudulent discharge papers, he nevertheless wilfully obstructed justice under section 3C1.1.

Thus, this Court OVERRULES Welch's objection to the obstruction enhancement in the PSR.

---

[4] At the sentencing hearing, Welch's current wife, Yvonne Welch, asserted through her attorney that if called to testify regarding the discharge document, she would exercise her Fifth Amendment right.

## CONCLUSION

For the foregoing reasons, the Court OVERRULES Defendant Welch's Objections [62-1] and GRANTS the Government's Motion for Upward Departure. It is so ordered.

ENTER: *Blanche M. Manning*
BLANCHE M. MANNING
U.S. DISTRICT COURT JUDGE

DATE: 9-22-03